IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YONGJIN HOU <br> 6523 Ivy Hill Dr. <br> McLean, VA 22101 <br><br> *Plaintiff,* <br><br> v. <br><br> UPSIDE SERVICES, INC. <br> 1701 Rhode Island Avenue, N.W. <br> Washington, D.C. 20036 <br><br> *Defendant.* | Case No. 1:23-cv-2177 <br><br> Jury Trial Demand |

## COMPLAINT

Plaintiff Yongjin "Kevin" Hou (hereinafter "Plaintiff Hou," "Mr. Hou," or "Plaintiff") by and through his attorneys, hereby files this Complaint against Defendant Upside Services, Inc. (hereinafter "Defendant" or "Upside Services" or "Upside") for detrimental reliance/promissory fraudulent inducement, and violation of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) in connection with 17 CFR § 240.10b-5 to recover unpaid wages, statutory damages, and attorney's fees and costs for breach of contract.

### JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1332 as Plaintiff and Defendant are citizens of different States and the amount in controversy exceeds $75,000.

1

2. This Court also has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331 as the action arises under the Securities Exchange Act of 1934, a law of the United States, and all other claims are part of the same case or controversy per 28 U.S.C.§ 1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that all or some events or omissions giving rise to Plaintiff's claims occurred in this judicial district, and Defendant may be found in this judicial district.

## PARTIES

4. Plaintiff Yongjin "Kevin" Hou was employed by Defendant in Washington, D.C. and is a citizen of Virginia, residing at 6523 Ivy Hill Dr., McLean, Virginia, 22101.

5. Defendant Upside Services, Inc. is a corporation with a principal place of business in Washington, DC, headquartered at 1701 Rhode Island Avenue, N.W., Washington, D.C., 20036.

## FACTS

6. Plaintiff Hou is an IT professional. On October 4, 2021, Plaintiff was contacted by Wayne Lin, co-founder and then Chief Operating Officer of GetUpside, (subsequently rebranded as Upside in 2022), via LinkedIn. Mr. Lin expressed his intention to recruit Plaintiff for the position of Vice President and Head of Data.

7. In October 2021, Mr. Lin facilitated an in-person meeting and subsequent interviews for Plaintiff with Upside's recruitment team.

8. In November 2021, Mr. Lin engaged in discussions with Plaintiff regarding the potential benefits of joining Upside, including the company's equity value. Plaintiff had reservations about joining Upside because it is significantly smaller and less established than Plaintiff's previous employer, Red Ventures. However, Mr. Lin's presentations about Upside's

equity were a significant factor in persuading Plaintiff to accept the position. Upside's offer consisted of a $280,000 annual base salary, supplemented by stock option grants. Compared to Plaintiff's income at Red Ventures in 2021, Upside's proposal was an income reduction exceeding $80,000 annually. However, Mr. Lin reassured Plaintiff that the Upside's stock value was already at $7.33 per share as of November 2021 and presented him with a Google Sheets document showing as much. By way of elaboration, under a heading entitled "We are here" the "$/share" is listed as $7.33, indicating that the per-share value was at $7.33. According to this valuation, the options Plaintiff would accrue over four years of employment with Upside would be equivalent to over $686,000, or, in other words, more than $171,000 annually for the 106,700 stock options he was offered. Additionally, Mr. Lin provided projections about the equity's potential value. According to Mr. Lin, the stock options Plaintiff would receive upon employment with Upside would equate to an additional annual income between $376,117 and $776,242, based on the expected per-share value of $15.00 to $30.00 by the fourth quarter of 2022.

9. Mr. Lin put considerable effort into convincing Plaintiff that the realizable stock value was already at $7.33 per share in November 2021 and that the expected, realizable value by the fourth quarter of 2022 would range between $15.00 and $30.00 per share. Mr. Lin intentionally did not disclose to Plaintiff that the actual Fair Market Value ("FMV") as of the fourth quarter of 2021 was significantly lower, likely around $0.90 a share. By way of background, in a June 30, 2023 email to Plaintiff from Chief Financial Officer Daryl Ribeiro, Mr. Ribeiro revealed that the FMV of Upside stock is the Strike Price, and the Strike Price listed on the spreadsheet that Mr. Lin presented to Plaintiff in November 2021 is $0.90.

10. For context, $1.20 is the per-share FMV as of June 2023 that Plaintiff discovered after his employment at Upside. Had Mr. Lin informed Plaintiff of the actual FMV of Upside's stock in November 2021, and utilized the FMV instead to calculate the option value and annual income equivalent resulting from the option value, Plaintiff would not have accepted Upside's employment offer.

11. On November 10, 2021, Plaintiff executed an employment agreement with Upside. On December 13, 2021, Plaintiff officially began his employment at Upside.

12. On May 31, 2023, Plaintiff's employment was terminated by Upside. On that same day, upon perusal of the departure documents furnished by the Human Resources department, Plaintiff sought to ascertain the tax implications associated with exercising the Upside's vested stock options. According to the information from Human Resources the options must be exercised within a 90-day window after the final day of employment, otherwise the stock options will be forfeited. Plaintiff's examination revealed that the FMV of Upside's stock stands at $1.20 per share as of June 2023, according to the exercise scenario depicted on Carta, the online platform utilized by Upside for the administration of stock options.

13. On June 16, 2023, Plaintiff documented his concerns and sent them to Upside, requesting a response by June 20, 2023.

14. Upon his termination, Mr. Hou was offered a standard severance package for employees with tenure of one year or less which included the equivalent of two weeks of salary and reimbursement for one month of COBRA coverage. By way of background, Mr. Hou was employed by Defendant for greater than one year at the time of his termination. Mr. Hou declined this offer. On June 30, 2023, Mr. Hou was informed that in light of the Upside Service's reduction in force terminating several positions with similar tenure, Defendant had agreed to

increase Mr. Hou's severance package to two months of salary, reimbursement for three months of COBRA coverage, ownership of an Upside laptop computer, and two months of outplacement services. Mr. Hou rejected in writing the revised offer from Upside. The severance packages offered required Mr. Hou to waive all claims and accusations of wrongdoing against Defendant, which Defendant denied in communications with Mr. Hou.

## COUNT I
### Promissory Estoppel/Detrimental Reliance

15. Plaintiff incorporates all above paragraphs as if they were set forth and repeated herein verbatim.

16. To establish a claim for promissory estoppel, a plaintiff must demonstrate (1) a promise; (2) that the promise reasonably induced reliance on it; and (3) the promisee relied on the promise to his detriment.

17. A promise was made to Plaintiff when Mr. Lin informed him in November of 2021 that as part of Plaintiff's compensation package, he would receive stock options of company stock worth $7.33 a share at the time, when in reality the stock was worth closer to $0.90 per share. On the basis of this promise, Mr. Lin also made representations to Plaintiff about the stock's expected future performance. But for the promise of a then-present stock value of $7.33 per share, Plaintiff quit a stable job with his prior employer to accept Defendant's offer of employment.

18. As a direct and proximate result of Defendant's actions, Plaintiff experienced considerable financial loss, harm to reputation, humiliation, and embarrassment.

## COUNT II
### Fraudulent Inducement

19. Plaintiff incorporates all above paragraphs as if they were set forth and repeated herein verbatim.

20. To establish a claim of fraudulent inducement, a plaintiff must establish (1) the defendant made a false representation; (2) the representation was in reference to a material fact; (3) the defendant had knowledge of its falsity; (4) the defendant intended to deceive; (5) the plaintiffs acted in detrimental reliance on the misrepresentation; and (6) the reliance was reasonable.

21. Here, Mr. Lin knowingly and therefore intentionally made false representations to Plaintiff regarding Defendant's actual, realizable stock value in November of 2021, and correspondingly misrepresented the stock's expected future performance, in offering Plaintiff 106,700 shares that Mr. Lin claimed were valued at $7.33 per share when he knew the value was closer to the Strike Price of $0.90 per share at that time. Plaintiff reasonably relied on Mr. Lin's representations; he reasonably believed Mr. Lin to be someone of knowledge of Defendant's stock value and had no reason to believe Mr. Lin would be deceptive with him. Plaintiff relied on Mr. Lin's representations in terminating his prior employment relationship to work for Defendant, and Plaintiff's prior employment relationship was terminated but for these representations.

22. As a direct and proximate result of Defendant's actions, Plaintiff experienced considerable financial loss, harm to reputation, humiliation, and embarrassment.

## COUNT III
## Violation of Securities Exchange Act of 1934
## 15 U.S.C. § 78j(b) in connection with 17 CFR § 240.10b-5

23.     Plaintiff incorporates all above paragraphs as if they were set forth and repeated herein verbatim and pleads this claim concurrently with all other claims to the extent permissible by law, and otherwise pleads it in the alternative.

24.     It is unlawful under the Securities and Exchange of 1934 "[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b).

25.     17 CFR § 240.10b-5, as prescribed by "the Commission" referenced in 15 U.S.C. § 78j(b), makes it "unlawful for any person . . . (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

26.     Defendant's furnishment of options to Plaintiff was done "in connection with the purchase or sale" of securities, and Mr. Lin knowingly inflating the stock's actual, realizable value and misrepresenting what Defendant believed in good faith to be the projected future performance of the stock was a "manipulative or deceptive device or contrivance" that contravened 17 CFR § 240.10b-5 as further clarified by 17 CFR § 240.10b-5.

27. As a direct and proximate result of Defendant's actions, Plaintiff experienced considerable financial loss, harm to reputation, humiliation, and embarrassment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Hou prays as follows:

A. That the Court enter judgment against Defendant and award damages no less than $5,000,000 (Five Million Dollars);

B. That the Court enter judgment in favor of Plaintiff against Defendant for all equitable monetary damages available under the law;

C. That the Court order Defendant to pay compensatory damages;

D. That the Court order Defendant to pay Plaintiff's reasonable attorneys' fees, expert fees, and costs; and

E. That the Court order Defendant to pay pre-judgment and post-judgment interest as provided by law.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all claims against Defendant.

Date: July 27, 2023                                Respectfully submitted,

                                          */s/ David A. Branch*
                                          David A. Branch
                                          D.C. Bar No. 438764
                                          Law Office of David A. Branch
                                          & Associates, PLLC
                                          1828 L Street N.W., Suite 820
                                          Washington, D.C. 20036
                                          Phone: (202) 785-2805
                                          Fax: (202) 785-0289
                                          Email: davidbranch@dbranchlaw.com